PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK J. MEZNARICH, SR., *et al.*, | ) | CASE NO. 1:10CV02532 |
| | ) | |
| Plaintiffs | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| MORGAN WALDRON INSURANCE | ) | |
| MANAGEMENT, LLC, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** (Resolving ECF No. 55) |

### I. Introduction

Before the Court is Plaintiff Frank J. Meznarich, Sr., Plaintiff Patrick Shutic, and Plaintiff Cale B. Pearson's (Collectively "Plaintiffs") Motion for Class Certification and Appointment of Class Counsel to represent themselves and all other similarly situated persons in the litigation against Defendant Morgan Waldron Insurance Management, LLC ("MWIM"), Defendant Beverly Morgan ("Morgan"), Defendant James Waldron, Defendant American Workers Master Benefit Plan, Inc., Defendant American Workers Master Benefit Trust - UWUA Local 270 ("Trust"), Defendant American Workers Master Benefit Plan for Employees of First Energy Corporation Represented by Local 270 of UWUA ("Plan"), Defendant PNC Investments, LLC, and Defendant PNC Financial Services Group, Inc.[1] (Collectively, "Defendants"). ECF No. 55. Defendants have filed an opposition to Plaintiffs' motion (ECF No. 59), to which Plaintiffs have replied (ECF No. 65). For the reasons discussed below, the motion is granted.

---

[1] Since the filing of this motion, Defendants Trust, PNC Investments, LLC, and PNC Financial Services Group, Inc. have been dismissed as improper parties to this suit.

(1:10CV02532)

## II. Background

In this putative class action, Plaintiffs seek relief, on behalf of themselves and all other similarly situated persons, for damages sustained as a result of Defendants alleged failure to provide fully insured health care benefit coverage under an employer funded health care plan ("the Plan"). ECF No. 19 at 7, ¶ 18. Plaintiffs are members of Utility Workers of America, Local 270 ("Local 270"), and are employees of First Energy Corporation ("FE"). ECF No. 19 at 4, ¶¶ 8-10. Pursuant to the Collective Bargaining Agreement ("CBA") between Local 270 and FE, Plaintiffs and other union members of Local 270 were given the option of obtaining health care benefit coverage from either their existing fully insured health care plan, provided by FE, or a separate health care plan to be determined by Local 270's bargaining unit. ECF No. 19 at 8, ¶ 28. If Plaintiffs and other Local 270 members exercised the latter option, the CBA required FE to forward the same amount of benefit monies (along with the employee contributions) to Local 270's designated health care plan. ECF No. 19 at 8, ¶ 28.

Plaintiffs aver that beginning in early 2009, Defendant Morgan, on behalf of herself and MWIM, solicited Local 270 Members to enroll in one of the health care plans orchestrated by Defendants. ECF No. 19 at 9, ¶ 29. According to Plaintiffs, Morgan offered two distinct types of health care benefit plans–a self-funded model and a fully insured model. ECF No. 19 at 9, ¶ 30. A fully insured plan involves an employer paying a premium to a health insurance carrier in exchange for a guaranteed level of benefit coverage for its employees. On the other hand, a self-funded health care plan would use the employer's funds to directly cover medical claims for its employees. ECF No. 19 at 9, ¶ 30. As applied to Local 270, Plaintiffs allege that Morgan

-2-

(1:10CV02532)

represented the self-funded plan would require (1) forming a trust and (2) transferring the benefit monies from First Energy into a trust to subsequently pay Local 270 member's medical claims. ECF No. 19 at 9, ¶ 30.

Plaintiffs allege that on June 24, 2009, after considering both plan models, the Local 270 Executive Board expressly rejected the self-funded option and informed Defendants of their decision. ECF No. 19 at 9, ¶ 31.

Local 270 members subsequently decided to enroll in an alternative plan also offered to them by Defendants. Plaintiffs contend, however, that Defendants fraudulently represented the selected plan as a fully insured plan with United Health care–the insurance conglomerate designated as the carrier. ECF No. 19 at 11, ¶¶ 37-38.

The Plan established by Defendants, to which the Plaintiffs and other Local 270 participants ultimately enrolled, was in reality a self-funded plan sustained by FE benefit money transferred into Defendant Trust. ECF No. 19 at 11, ¶ 39. Moreover, instead of United Healthcare assuming the role of carrier, as Plaintiffs allege was promised, Defendants contracted with a subsidiary of the conglomerate, UMR, to provide third party claims administration for the Plan. ECF No. 19 at 13, ¶¶ 47-48. Eventually, the incoming medical claims for Local 270 members exceeded the monies in the Trust and, as a result, UMR was unable to pay the Plan beneficiaries' medical expenses. ECF No. 19 at 15, ¶ 53. Unbeknownst to Plaintiffs, UMR informed Defendants that it would be terminating its arrangement with Defendants effective October 31, 2010. ECF No. 19 at 15, ¶ 55. Plaintiffs allege that Defendants delayed notifying them of this fact, and as a result, Local 270 had less than two weeks to obtain alternative

(1:10CV02532)

coverage. ECF No. 19 at 16, ¶ 59. Plaintiffs allege that Defendants' conduct forced the Plan participants to pay an increased premium for replacement insurance and left participants with the responsibility of paying outstanding medical claims. ECF No. 19 at 16, ¶¶ 59, 61.

On December 28, 2010, Plaintiffs initiated the instant action, asserting causes of action of Breach of Fiduciary Duty, Violation of an ERISA Plan, and Fraud against Defendants. ECF No. 19 at 19-21.

In the instant motion, Plaintiffs move the Court for class certification pursuant to Fed. R. Civ. P. 23 (a), (b), and (g). The proposed Class ("Class") consists of all individuals who are or were participants and/or dependents of participants in the Plan. ECF No. 55.

### III. Standard for Class Certification

The principal purpose of class actions is to achieve efficiency and economy of litigation, with respect to both the parties and the courts. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 159, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Before certifying a class, the district court must conduct a "rigorous analysis" of the prerequisites of Federal Rule of Civil Procedure 23. *Id*. at 161, 102 S.Ct. 2364. A district court has broad discretion in deciding whether to certify a class, although it must exercise that discretion within the framework of Rule 23. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 559-60 (6th Cir. 2007); *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996).

"Rule 23 does not require a district court, in deciding whether to certify a class, to inquire into the merits of the plaintiff's suit." *Beattie*, 511 F.3d at 560. But in evaluating whether class certification is appropriate, "it may be necessary for the court to probe behind the pleadings,"

-4-

(1:10CV02532)

because the relevant issues are often "enmeshed" within the legal and factual considerations raised by the litigation. *Falcon*, 457 U.S. at 160, 102 S.Ct. 2364. The party seeking class certification bears the burden of establishing that the requisites are met. *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003).

## IV. Discussion

### A. Class Definition

In reviewing a motion for class certification, the Court must first identify the purported "class"and determine that the named plaintiffs are members of the class. The class definition must specify "a particular group at a particular time frame and location who were harmed in a particular way" and define the class so that its membership can be objectively ascertained. *Edwards v. McCormick*, 196F.R.D. 487, 491 (S.D. Ohio 2000).

### B. Rule 23 Generally

After a class has been identified, Plaintiffs must establish that the requirements of Rule 23(a) are met. Rule 23(a) lists four requirements for the certification of a class. The proposed class representative bears the burden to establish that each of these four requirements are satisfied with respect to the proposed class. *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003); *Kutschbach v. Davies*, 885 F. Supp. 1079, 1083 (S.D. Ohio 1995). The requirements are as follows:

1. Numerosity: the members of the class must be so numerous that joinder of all members is impracticable;

2. Commonality: questions of law or fact must be common to the entire class;

(1:10CV02532)

      3.      Typicality: the claims or defenses of the named representative must be typical of the claims or defenses of the class; and

      4.      Adequacy: the named representative must fairly and adequately represent the interests of the class as a whole.

In addition to showing that each of the four requirements of Rule 23(a) is satisfied, Plaintiffs must also demonstrate the class certification is appropriate under one of the subcategories of Rule 23(b). *Id*. at 1083-84. This is discussed below.

The Court is required to conduct a "rigorous analysis" into whether the requirements of Rule 23 are met before certifying a class. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161(1982). The Court has broad discretion in deciding whether to certify a class, but this discretion must be exercised within the framework of Rule 23. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1029 (6th Cir. 1977) ("district court has broad discretion in determining whether a particular case may proceed as a class action so long as it applies the criteria of Rule 23 correctly."). The Court cannot find an action is maintainable as a class action merely because it is designated as such in the pleadings. Rather, "[t]here must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled." *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974).

While the Court does not examine the merits of the claims, "it may be necessary for the court to probe behind the pleadings . . . ." *Falcon*, 457 U.S. at 160. The Court "must undertake an analysis of the issues and the nature of required proof at trial to determine whether the matters

(1:10CV02532)

in dispute and the nature of the plaintiffs' proofs are principally *individual* in nature or are susceptible of *common proof* equally applicable to all class members." *Little Caesar Enters. v. Smith*, 172 F.R.D. 236, 241(E.D. Mich. 1997) (emphasis in original).

### C. Rule 23(a) Prerequisites

The Court first turns to the requirements of Rule 23(a), which are:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The Court will discuss each of these prerequisites in turn.

#### 1. The Class is so Numerous that Joinder of all Members is Impracticable

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The Sixth Circuit has stated that, although "there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." *Daffin v. Ford Motor Co., 458 F.3d 549, 552 (6th Cir. 2006)*. According to Newberg's often-cited treatise, "the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone." 1 William B. Rubenstein, Alba Conte and Herbert B. Newberg, Newberg on Class Actions § 3:5 (4th ed.).

In the instant case, Plaintiffs have identified 1100 Local 270 participants that are members of the proposed Class. ECF No. 19 at 7, ¶ 7. This number is high enough that joinder

(1:10CV02532)

would be impracticable.  Plaintiffs have therefore satisfied the numerosity requirement.  *Daffin, 458 F.3d at 552*.

### 2. Questions of Law or Fact Common to the Class Exist

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  The Sixth Circuit has characterized the commonality requirement as "qualitative rather than quantitative" and has observed that "[v]ariations in the circumstances of class members are acceptable, as long as they have at least one issue in common."  *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996).  The resolution of the common issue must "advance the litigation."  *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998).

In the instant case, Plaintiffs' claim that Defendants utilized a self-funded plan sustained by the Trust while fraudulently representing that they were transferring money to a fully insured plan is the basis of the action.  Defendants' alleged mismanagement of the Trust and fraudulent concealment harmed the Local 270 participants in the same fashion.  Thus, the class members share common questions of law and fact.  *Daffin*, 458 F.3d at 552.

### 3. The Representative Parties's Claims are Typical of the Claims of the Proposed Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  A proposed class representative's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., 75 F.3d at 1082* (citation omitted).  Thus, in situations where typicality is found, "the

-8-

(1:10CV02532)

representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Id.*

Here, Plaintiffs and the proposed class members' claim arises from Defendants' alleged creation and concealment of the self-funded plan and Trust, termination of the third party claims administration agreement, and failure to fund the medical claims. Defendants' allegedly subjected all of the Local 270 participants in the Plan to outstanding medical claims and/or increased premiums. In pursuing the representatives' individual claims, the named representatives will advance the interests of the class members. The representative parties' claims, therefore, are typical of the claims of the proposed class. *Daffin*, 458 F.3d at 552.

### 4. Defendants' Arguments for Denying Class Certification on the Basis of Lack of Commonality and Typicality

In Defendants' opposition brief, they contend that Plaintiffs have failed to meet the commonality and typicality requirements necessary to certify the proposed Class, specifically with respect to the Fraud count as it requires individualized evidence of reliance and causation. ECF No. 61 at 8-11. In support of their assertion, Defendants argue that not all of the proposed Class members voted on the opt-out or heard the alleged misrepresentation at the various meetings where Defendant Waldron presented the Plan. Defendants further argue that not all of the proposed Class members relied upon the alleged misrepresentations. ECF No. 61 at 8-9. Additionally, Defendants inform the Court that out of the approximately 1100 Local 270 participants in the Plan and their covered dependents, only 675 have unpaid health care claims. ECF No. 61 at 9. Defendants assert that such inconsistency and variance of facts and damages amongst the proposed Class require the Court to deny the motion. ECF No. 61.

(1:10CV02532)

The Court disagrees. As a preliminary matter, the Court notes that Defendants' brief narrowly focuses upon the Fraud count and remains silent with respect to Plaintiffs' other allegations. Defendants fail, therefore, to convince the Court that the instant motion requires *complete* dismissal.

In addition, while Defendants correctly recognize that proving the elements of reliance and causation for fraud require individualized determinations, when a misrepresentation is made to a class of similarly situated individuals, the requirement that a plaintiff prove reliance or causation will not, by itself, defeat class certification. See *Edwards v. First Am. Corp.*, 385 Fed. Appx. 629, 631 (9th Cir. 2010) (citing Fed. R. Civ. P. 23(b)(3) advisory committee's note ("[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action . . . [unless] there [is] material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed."); *see also Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (recognizing that claims based on largely uniform representations to a discrete group could be certified in the appropriate case).

Courts have held that class certification is improper when the misrepresentations involve different representations made to different class members. See *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340-41 (4th Cir. 1998) (reversing verdict in favor of class of franchisees claiming that franchisor had breached contracts and committed commercial torts; plaintiffs had relied on evidence of individualized oral representations to different class members, which defeated typicality); *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th

(1:10CV02532)

Cir. 1998) (reversing class certification where claims depended on different representations made to different class members); *In re Sears Retiree Group Life Ins. Litigation*, 198 F.R.D. 487, 490 (N.D. Ill. 2000) (denying class certification where the "total mix" of communications received by class members demonstrated too much variation among the class).

The circumstances presented in the instant case are distinguishable from the cases relied upon by Defendants. Plaintiffs assert that while the misrepresentations were presented on different occasions, the misrepresentations were the same and presented to all prospective class members. The Amended Complaint states that prior to Local 270's vote to terminate its health benefit coverage with FE, Defendants misrepresented the Plan in the same fashion–allegedly misrepresenting that the Plan was fully insured–at each of four separate membership meetings with Local 270 members. ECF No. 19 at 10-11. Their presentations, while oral, also provided written material allegedly portraying the Plan as fully insured. ECF No. 19 at 11. In addition, Defendant Morgan and MWIM, both orally and through written materials, continued the same alleged fraudulent misrepresentation–that the Plan was fully insured–when enrolling the proposed class members into the Plan.[2] ECF No. 19 at 11; ECF No. 59 at 3.

Plaintiffs' plausible allegation that Defendants made the same representations to all the class members is sufficient to satisfy the commonality and typicality requirement of the Fraud count. See *Pfaff v. Whole Foods Mkt. Group, Inc.*, 2010 U.S. Dist. Lexis 104784, *10-13 (N.D.

---

[2] In an Affidavit, Defendant Morgan states "at the open enrollment meetings to enroll Local 270 members for health care benefits. . . Defendant MWIM offered the same PowerPoint presentation . . . and distributed the same handouts . . . as in the [membership meetings before the opt-out vote]." ECF No. 59 at 3.

-11-

(1:10CV02532)

Ohio 2010) (rejecting defendants' argument that class certification should be denied because of individualized issues of reliance and causation; and instead, held that commonality and typicality requirements were met even though the uniform misrepresentations were presented to different class members on different occasions); *see also Nelson v. IPALCO Enters.*, 2003 U.S. Dist. Lexis 26392, *12-15 (S.D. Ind. 2003) (rejecting defendants' argument that the plaintiffs' misrepresentation could not satisfy typicality because plaintiffs indicated that their claim was based upon general statements and announcements rather than on individual conversations and individual representations).[3]

 Defendants' assertion that the class certification should be denied because not all of the proposed Class members have outstanding medical bills is also without merit. The record reflects that while not all of the members have outstanding medical claims, each member suffered damages. ECF. No. 65 at 5; ECF No. 19 at 16. Because Defendants allegedly concealed UMR's notice of termination until two weeks prior to the termination date, Local 270 was forced to mitigate harm by securing a new health care benefit provider. The provider agreed to accommodate the proposed Class conditioned on paying an increased insurance premium. Plaintiffs have indicated that the increased premium expense impacts the entire proposed Class and would not have been incurred, but for Defendants' alleged misconduct. ECF No. 19 at 16. The Court finds this alleged injury sufficient to establish uniform class-wide damage.

---

 [3] As the Court held in *Nelson*, to the extent that Plaintiffs may later signal their intention to prove the Fraud count by relying on private communications between Defendants and individual class members, this decision certifying the proposed Class with respect to the Fraud count may need to be revisited. *Id*.

(1:10CV02532)

### 5. The Representative Parties Will Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." To fulfill this requirement, the plaintiff must show that: (1) the class representative has common interests with the rest of the class; and (2) the class representative will vigorously prosecute the interests of the class through qualified counsel. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 563 (6th Cir. 2007). The common-interest criterion requires that there be no antagonism or conflict of interest between the class representative and the other members of the class. *In re Am. Med. Sys.*, 75 F.3d at 1083. The second criterion inquires into the competence of counsel. *Id.*

In the instant case, the class representatives and the proposed Class share the common interest of recovering the unpaid medical claims and increased premium cost resulting from Defendants' alleged fraud and mismanagement of the Plan. At this juncture, the record does not reveal a material conflict of interest between the class representatives and the proposed class members exists. Moreover, the named representatives have pledged in sworn statements to pursue the interests of the Class. ECF Nos. 55-2; 55-3; 55-4. The named representatives' counsel, Joyce Goldstein, has submitted a sworn statement indicating her twenty-five years of experience litigating ERISA class actions for health insurance benefits. ECF No. 55-6. Thus, the record reveals that the named representatives satisfy the adequacy of representation requirement. *Daffin*, 458 F.3d at 553.

(1:10CV02532)

### 6. Defendants' Arguments for Denying Class Certification for Inadequacy of Representation

Defendants contend that the named Plaintiffs are not adequate class representatives because they cannot prevail on the merits. With respect to Plaintiffs Shutic and Pearson, Defendants state that they were not present to hear the alleged misrepresentations made during the membership meetings. ECF No. 61 at 12. In regards to Plaintiff Meznarich, Defendants argue that his position is antagonistic to the proposed Class because he was aware that the Plan would be self-funded. ECF No. 61 at 11-12. To support this argument, Defendants have submitted to the Court a copy of an email exchange, copying Plaintiff Meznarich, wherein it was discussed that the Plan would be self-funded.

With respect to the claims against Shutic and Pearson, Plaintiffs respond by labelling such allegations "irrelevant because the fraudulent misrepresentations were made to and acted upon by Local 270 members collectively." ECF No. 65 at 6. Specifically, they argue that when Local 270 members relied upon Defendants' alleged fraudulent misrepresentations and voted to opt-out of their existing health care plan, they bound the entire group, including the named Plaintiffs. They contend that it is the voting members' reliance that is sufficient to meet the Fraud count. ECF No. 65 at 4-7. When discussing Plaintiff Meznarich, Plaintiffs provide a similar argument, asserting that the email was sent in October 2009, long after Local 270 members voted to opt out of their existing health benefit coverage provided by FE. Additionally, Plaintiffs state that even at the time of the email, Plaintiff Meznarich was unaware that the Plan involved the Trust. ECF No. 65 at 6-8.

(1:10CV02532)

It is troubling that Plaintiffs have failed to provide any case law to support their assertion that it is irrelevant whether members of the Class, including the named Plaintiffs, have either heard or relied upon the fraudulent misrepresentations. Under Ohio law, "A plaintiff fails to state a valid cause of action for fraud when he alleges that a third-party relied on misrepresentations made by a defendant and that he suffered injury from that third-party's reliance." See *Whittle v. P&G*, 2007 U.S. Dist. Lexis 87216, *18 (S.D. Ohio 2007). In the absence of any other authority providing an exception, the holding in Ohio courts preclude Plaintiffs from prevailing on such an argument.

Yet, as indicated above, the record reflects that each Local 270 member was presented with substantially similar alleged misrepresentations during either the meetings before the vote to opt-out of their existing health care plan, or during the enrollment period. The Court declines to remove Plaintiffs Shutic and Pearson as the proposed Class representatives given that there remains a possibility that the named Plaintiffs can prevail not only upon the Fraud count, but based upon the additional allegations as well.

With respect to Plaintiff Meznarich, the Court also declines to remove him as a class representative at this time. Even though Defendants' evidence indicates that Meznarich may have been aware of the true nature of the Plan, it is not conclusive. The record fails to indicate whether the email was received prior to Meznarich enrolling in the Plan, which would put him on the same footing as the other Class members. In addition, Plaintiffs state that at the time of the email, Meznarich was not aware that the Plan was sustained by the Trust. ECF No. 65 at 6-7. Minimally, this allegation gives credence to Meznarich's claim that he was unaware of the true

(1:10CV02532)

nature of the Plan, and it would not refute his argument that he was intentionally misled. *See Stanich v. Travelers Indem. Co.*, 249 F.R.D. 506, 516 (N.D. Ohio 2008) ("Ohio law imposes a duty to make full disclosure in circumstances where full disclosure is necessary to dispel misleading impressions that are, or might have been, created by partial revelation of the facts."). The Court finds Plaintiffs have shown numerosity, typicality, commonality and adequacy, and therefore, have satisfied Rule 23(a). *See Thompson v. Community Insurance Company*, 213 F.R.D. 284, 291 (S.D. Ohio 2002) (stating that the Court must undertake a "rigorous analysis" in certifying a class, but that "any doubts as to certification should be resolved in the favor of Plaintiffs"). The Court now turns to the requirements of Rule 23(b).

### B. The Rule 23(b) Requirements for Class Certification

In addition to meeting the requirements of Rule 23(a), Plaintiffs must also demonstrate that the certification falls within at least one of the subcategories of Rule 23(b). Rule 23(b) provides, in pertinent part, that:

> A class action may be maintained may be maintained if Rule 23(a) is satisfied and if:
> (1) prosecuting separate actions by or against individual class members would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. . ." Fed. R. Civ. P. 23(b)(1).

Plaintiffs contend they meet the class certification requirement pursuant to Rule 23(b)(1)(A).[4]

---

[4] Plaintiffs also assert arguments for class certification under Rules 23(b)(1)(B) and 23(b)(3). The Court, however, will refrain from determining whether class certification is

(1:10CV02532)

The individual litigation of each Local 270 participant's claim has the potential to yield inconsistent or varying adjudications with respect to the same alleged conduct by Defendants. Such varying adjudications could subject Defendants to avoidable incompatible standards of conduct. Plaintiff's claims, therefore, meet the requirements of class certification under Rule 23(b)(1)(A).

### C. The Rule 23(g) Requirements for Appointing Class Counsel

Rule 23(g) requires that the Court appoint class counsel. Rule 23(g) states, in pertinent part:

> (1) Appointing Class Counsel. Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
> (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; . . .
> (2) Standard for Appointing Class Counsel. When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under 23(g)(1) and (4).
> (4) Duty of Class Counsel. Class counsel must fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g).

Plaintiffs' counsel, Joyce Goldstein, has submitted an affidavit declaring her competence under Rule 23(g). ECF No. 55-6. Goldstein has "performed significant work" identifying and investigating the claims of the proposed class since October 2010. ECF No. 55-1 at 14-15. Goldstein declares that she has extensive experience litigating ERISA and LMRA class action cases. ECF No. 55-6. Lastly, Goldstein claims that she has extensive knowledge in this area of

---

appropriate pursuant to these categories of 23(b) because the record supports certifying the class under Rule 23(b)(1)(A), as indicated above.

(1:10CV02532)

law and that she, with the assistance of other members of her firm, will adequately pursue the claims of the proposed Class. ECF No. 55-1 at 15.

Goldstein's declarations persuade the Court that she will fairly and adequately represent the Class as required. In fact, the docket reflects her capabilities in this regard. The Court therefore finds that Goldstein is qualified under Rule 23(g) and appoints her to represent the interests of the Class.

## V. Conclusion

For the reasons discussed above, the Court grants Plaintiffs' Motion for Class Certification and Appointment of Class Counsel. The Court reserves the right to revisit the decision to certify the Class with respect to the requirements of commonality and typicality of the Fraud claim.

    IT IS SO ORDERED.

| | |
|---|---|
| September 30, 2011 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |