PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FRANK J. MEZNARICH, SR. *et al.*, ) | |
| ) | CASE NO. 1:10cv2532 |
| Plaintiffs, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| MORGAN WALDRON INSURANCE ) | |
| MANAGEMENT, *et al.*, ) | |
| ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | **ORDER** [Resolving ECF Nos. 77 and 78]. |

## I. INTRODUCTION

Before the Court are motions to dismiss filed by Third-Party Defendants FirstEnergy Corporation ("FirstEnergy") and Utility Workers Union of America, Local 270 ("Local 270"), respectively. ECF Nos. 77 and 78. For the reasons discussed below, both motions are denied in part, and granted in part.

## II. BACKGROUND

This action originated with Plaintiffs, Frank J. Meznarich, Sr., Patrick Shutic, and Cale B. Pearson (collectively, "Plaintiffs"), filing an Amended Class Action Complaint on behalf of themselves and other union members against various Defendants including Morgan Waldron Insurance Management LLC, the American Master Benefit Plan for Employees of First Energy Corporation Represented by Local 270 of UWUA, and American Workers Master Benefit Plan,

1:10cv02532

Inc. (collectively, "Morgan Waldron"), for Breach of Fiduciary Duty, Violation of ERISA Plan, and Fraud. ECF No. 19. As outlined in the parties' prior briefings, Plaintiffs maintain that Defendants fraudulently created and concealed the fact that they created a self-funded ERISA benefit plan ("the Plan"), rather than purchase fully insured coverage as allegedly instructed by Utility Workers Union of America, Local 270 ("Local 270"). Plaintiffs further allege that as Plan Administrators and/or fiduciaries of the Plan, Defendants' actions caused the Plan to be underfunded, resulting in the nonpayment of routine claims by the Plan's participants. ECF No. 19.

Morgan Waldron denied these allegations and filed a Third-Party Complaint (ECF No. 39) against the following Third-Party Defendants: (1) FirstEnergy Corp. ("FirstEnergy")–employer of Plaintiffs and Local 270 members, (2) Local 270—the exclusive union representative of Plaintiffs and other affected FirstEnergy employees, and (3) United Medical Resources, Inc.—Third-Party Administrator of the Plan.

The crux of Morgan Waldron's allegations made *via* the Third-Party Complaint is that FirstEnergy and Local 270 allegedly provided inaccurate and unreliable claims experience data, which were used by Morgan Waldron in calculating the amount of contributions necessary to fund the Plan. Morgan Waldron avers that the allegedly faulty data resulted in contribution rates too low to support the benefits claimed by the participants. ECF No. 39 at 4-5. Morgan Waldron further avers "that in a good faith effort to assist the Plan to pay claims in a timely manner, [Morgan Waldron] loaned the Plan $490,000." ECF No. 39 at 5.

Based upon the aforementioned allegations, Morgan Waldron lodges a total of nine causes of action against the three Third-Party Defendants, most of which are State law claims.

1:10cv02532

Concerning Local 270, Morgan Waldron asserts claims for Contribution and Indemnification (Count V), Negligent Misrepresentation (Count VI), and Unjust Enrichment (Count IX). With regard to FirstEnergy, Morgan Waldron lodges four causes of action against it including the same claim of Unjust Enrichment (Count IX) asserted against Local 270, and claims for Contribution and Indemnification (Count I), Negligent Misrepresentation (Count IV), Violation of ERISA Plan (Count II), and a "Claim under the Labor Management Relations Act § 301" (Count III). ECF No. 39.

On April 18, 2011, FirstEnergy filed a motion to partially dismiss the Third-Party Complaint, which seeks dismissal of all claims asserted against it, with the exception of the LMRA claim. ECF No. 77. On April 22, 2011, Local 270 filed its motion to dismiss all three claims lodged against it. ECF No. 78. On July 13, 2011, Morgan Waldron filed its response (ECF No. 98), to which both parties subsequently replied (ECF Nos. 99 and 100).

After reviewing the briefs and finding that both FirstEnergy and Local 270 moved to dismiss primarily on the grounds that the claims were preempted by ERISA, the Court concluded that the Supreme Court case, *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), may be instructive to the parties in framing their pre-emption arguments. Thus, on February 13, 2012, the Court filed an order permitting all counsel to file supplemental briefs on the relevance of *Davila* to the Court's ERISA preemption analysis, or, more broadly, on whether the instant claims "relate to" an ERISA plan. ECF No. 113. On February 21, 2012, all of the parties filed their supplemental responses. ECF Nos. 116, 117, 118. The instant motions are now ripe for discussion.

3

### III. STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) Motion to Dismiss is to test the sufficiency of the complaint. *See Davis H. Elliot Co., Inc. v. Caribbean Utils. Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975). When considering such a motion, the Court must take all well pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). "The Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Consequently, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

To be considered plausible, a claim must be more than merely conceivable. S*ee Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). What this means is that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

4

## IV. DISCUSSION

### A. State Law Claims

In their motions to dismiss, both FirstEnergy and Local 270 contend that Morgan Waldron's State law claims for Negligence Misrepresentation, Contribution/Indemnification, and Unjust Enrichment are preempted by ERISA and therefore warrant dismissal. [1] The Court holds that only the latter claim for Unjust Enrichment is preempted by ERISA. The state law negligent misrepresentation and Contribution/Indemnification claims are not.

ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a).

The Sixth Circuit instructs that when "interpreting ERISA's preemption clause, a court 'must go beyond the unhelpful text . . . and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.'" *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.* ("PONI"), 399 F.3d 692, 698 (6th Cir. 2005) (citing *Travelers Ins. Co.*, 514 U.S. at 656). The Sixth Circuit therefore has determined that ERISA preempts state laws that (1) 'mandate employee benefit structures or their administration;' (2) provide 'alternate enforcement mechanisms;' or (3) 'bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.'" *Id.* (citing *Coyne & Delany Co. v. Selman,*

---

[1] In their respective motions, Local 270 and FirstEnergy also contend that the state law claims are preempted by the Labor Management Relations Act (LMRA). The Court finds that this argument lacks merit. It is not apparent at this stage of the litigation that any of the State law claims either arise from a breach of a collective bargaining agreement or depend upon the meaning of a collective bargaining agreement. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409-10 (1989) ("[I]f the resolution of a [S]tate-law claim depends upon the meaning of

5

98 F.3d 1457, 1468 (4th Cir. 1996)).

Additionally, as further guidance to this Court's preemption inquiry, the Sixth Circuit has stated that "Congress did not intend []for ERISA 'to preempt traditional State-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries.'" *Id.* (citing *LeBlanc v. Cahill*, 153 F.3d 134, 147 (4th Cir. 1998)).

In light of these principals, the Court will now analyze whether each State law claim is preempted by ERISA.

### 1.  Negligent Misrepresentation

Morgan Waldron's negligent misrepresentation claims are premised upon the allegation that the Third-Party Defendants breached their duty to provide accurate and reliable claim experience data which resulted in "contribution rates too low to support the benefits claimed by the Plan participants." In their respective motions to dismiss, FirstEnergy and the Local 270 aver that the negligent misrepresentation claims are preempted by ERISA because any duty that the parties may have allegedly owed to Morgan Waldron in furnishing the data stemmed from the Plan. Alternatively, they argue that if the duty to provide the claims data did not arise from the Plan, then the alleged duty to provide the data could not have existed, which—in the Third-Party Defendants' view—necessitates dismissal of the negligence misrepresentation claims. ECF Nos. 99 at 5; 100 at 5; 118 at 2. The Court finds both arguments unavailing.

As a preliminary matter, the Court notes that resolving whether the Third-Party Defendants alleged duty to provide accurate and reliable claim experience data was derived from the Plan or from some other external source would certainly be a dispositive clue in determining whether the

a collective bargaining agreement, the application of [S]tate law . . . is preempted"); *see also*

instant claims are preempted by ERISA. In prior cases, wherein a State law cause of action has survived ERISA preemption, courts have found that the legal duty giving rise to the cause of action was independent of an ERISA plan.[2] In contrast, where the legal duty was found to have been derived from the ERISA plan, courts have found the State law cause of action to be preempted on the basis that the claim is nothing more than an alternative theory of recovery for conduct actionable under ERISA and, therefore, conflicts with ERISA's exclusive enforcement scheme.[3]

In the instant case, Morgan Waldron avers—contrary to the Third-Party Defendants' assertion—that the duty to provide reliable claims data was not dictated by the Plan (ECF No. 98 at 5) "but by ordinary notions of honesty and fairness as enforced by tort law." ECF No. 98 at 7. At the motion to dismiss stage, the Court must construe the complaint in favor of plaintiff and accept the factual allegations contained in it as true. *Twombly*, 550 U.S. at 555-56. Thus, the Court finds that Morgan Waldron's negligent misrepresentation claims are analogous to the set of cases, wherein courts have held that a State law claim survived ERISA preemption because the legal duty giving rise to the claim was independent of ERISA.

The Third-Party Defendants' second argument untethers the Court's conclusion. The parties contend that, in absence of a duty to provide the claims data arising out of the Plan, the duty could not have existed. The Court disagrees.

---

*Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989).
[2] *See PONI*, 399 F.3d at 699 (explaining that in prior cases in which the courts have found that ERISA does not preempt State law claims against a non-fiduciary when a separate agreement distinct from the ERISA qualified plan served as the basis for the claim); *see also Briscoe*, 444 F.3d at 501 (finding claim not preempted because the cause of action asserts a violation of a legal duty independent of ERISA).
[3] *See Briscoe v. Fine*, 444 F.3d 478, 499-501 (6th Cir. 2006) (explaining that when an obligation stems from an ERISA plan and not an independent legal duty, the claim is preempted because the state law claim serves as an alternative enforcement mechanism).

1:10cv02532

The Sixth Circuit has recognized that Ohio law defines a claim for negligent misrepresentation as follows:

> [O]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 505 (6th Cir. 2003) (quoting *Delman v. Cleveland Hts.*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 838 (1989) (emphasis added). Stated differently, under Ohio law, a defendant could have a duty to exercise reasonable care or competence and be liable for breaching said duty, if each of the elements constituting the negligent misrepresentation claim is established.

In the instant case, Morgan Waldron has alleged sufficient facts in the complaint establishing that it is at least plausible that each element of the cause of action exists. And neither the Union nor FirstEnergy has presented an adequate argument contradicting the Court's finding of plausibility.[4] Thus, the Court sees no reason to give credence to the Third-Party Defendants' argument that the duty to provide claims data could not have existed if not derived from the Plan.[5]

---

[4] FirstEnergy raises an argument attacking the negligent misrepresentation claim as pled. But the Court disregards this argument because it (1) was raised for the first time in the reply memoranda, and (2) focuses on the justifiable reliance element of the cause of action, which is inappropriate at the motion to dismiss stage. *See In re Nat'l Century Fin. Enters.*, 580 F. Supp. 2d 630, 648 (S.D. Ohio 2008) (stating that "the issue of whether a party's reliance was justifiable . . . is largely a question of fact inappropriate for resolution on a motion to dismiss").

[5] The Court concedes that it is highly unlikely that Morgan Waldron will be successful in its negligent misrepresentation claim. As indicated above, establishing the claim will require proving that Morgan Waldron justifiably relied on the Third-Party-Defendants information. Given that neither of the parties is in the business of supplying said information, proving

8

FirstEnergy nonetheless argues that the claim is preempted because as an employer, and alleged fiduciary of the Plan, it remained a traditional ERISA plan entity.[6] ECF Nos. 77-1 at 9; 99 at 3. In support of this argument, FirstEnergy relies upon Sixth Circuit pronouncement in *PONI*, which states that "Congress did not intend [] for ERISA 'to preempt traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries.'" *PONI*, 399 F.3d at 698 (citing *LeBlanc v. Cahill*, 153 F.3d 134, 147 (4th Cir. 1998)).

This additional preemption argument presented by FirstEnergy is not entirely clear. Reading the argument in its most straightforward sense, FirstEnergy appears to contend that its status as a sponsor to the plan and alleged fiduciary precludes Morgan Waldron from lodging a State law claim against it. The Court readily rejects this argument, in light of the significant amount of case law contradicting this position. For instance, "[t]he Supreme Court has made clear . . . that many 'lawsuits against ERISA plans for run-of-the-mill [S]tate-law . . . torts committed by [the] ERISA plan' are not preempted, even though these suits 'obviously affect[] and involve ERISA plans and their trustees.'" *Darcangelo v. Verizon Communs., Inc.*, 292 F.3d 181, 191-192 (4th Cir. 2002) (citing *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 833, (1988).

---

*justifiable* reliance will be a difficult burden to overcome. *See* Restatement 2d of Torts, § 552. Nevertheless, it is well settled that a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974).

[6] FirstEnergy appears to raise this argument in support of the preemption of all the State law claims asserted against it, including the negligent misrepresentation claim. But the Court acknowledges that this argument was specifically raised to support the preemption of the contribution/indemnification claims. Ultimately, the Court's conclusion that the argument lacks merit applies to all of the State law claims.

9

However, because FirstEnergy relies upon *PONI* in formulating its argument, its assertion can also be construed as suggesting that the negligent misrepresentation claim is preempted because the claim is the antithesis of the pronouncement in *PONI*. In other words, FirstEnergy appears to contend that the negligent misrepresentation claim is preempted because the claim is not a traditional State-based law of general applicability and it impermissibly implicates the relations among the traditional ERISA plan entities. The Court disagrees with this assertion as well.

In evaluating whether a State law claim is one of general applicability that does not implicate the relations among the traditional plan entities and, therefore, is not preempted, courts have conducted a series of inquiries including analyzing (1) whether the State law claim is rooted in a field of traditional state regulation (2) whether the State law claim "is a generally applicable law that makes no reference to or functions irrespective of, the existence of an ERISA plan" and (3) whether the claim affects relations among the principal ERISA entities. *See Coyne & Delany Co.*, 98 F.3d at 1471-1472 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (U.S. 1990)); *see also PONI*, 399 F.3d at 700-02.

Applying those inquiries to the facts at hand, it cannot be said, at this stage, of the litigation that the negligent misrepresentation claims fall into any of the aforementioned categories suggesting preemption. First, negligent misrepresentation is a form of tort liability, which has historically been a State concern. Thus, the claim is rooted in a field traditionally regulated by the State. *Coyne & Delany Co.*, 98 F.3d at 1471. Additionally, based upon Morgan Waldron's allegations, the duty to provide the claims data, giving rise to the negligent misrepresentation claims, occurred prior to the Plan's formation and was independent of the

10

Plan.  Thus, the negligent misrepresentation claims, as pled, function irrespective of the Plan.  *Id.*

Finally, it is not at all apparent that the claim affects the relations among the principal ERISA entities.  Even though both Morgan Waldron and FirstEnergy are traditional ERISA plan entities as co-fiduciaries of the Plan and co-sponsors of the Plan, their respective statuses are inconsequential to the Court's analysis  because the alleged negligent conduct occurred prior to the formation of the Plan and prior to either party taking on its alleged fiduciary role.  *Id.* at 1471-72.

While FirstEnergy categorizes the alleged duty to provide claims data as fiduciary in nature and avers that providing the data was related to the administration of the Plan, in support of its preemption argument,[7] the Court finds that the case law does not necessarily align itself with FirstEnergy's assessment.[8]  Case law, it seems, urges that because the duty to provide claims data was related to establishing or creating the Plan, the claim falls outside of ERISA's reach.

Local 270 raises an additional argument for preemption.  It contends that it is "undisputed in the matter at bar that [Morgan Waldron] seeks payment for unpaid claims [and that s]uch a determination will require a calculation of plan benefits owed under the Plan, rendering the claim preempted."  ECF No. 100 at 3.  In support of this contention, Local 270

---

[7] ECF Nos. 99 at 2, 4-5; 116.
[8] In *Lockheed Corp. v. Spink*, 517 U.S. 882, 89-91 (U.S. 1996), the Supreme Court recognized that the defined functions of a fiduciary under ERISA do not include plan design and has therefore held that when an employer creates an employee benefit plan it is acting as plan settlor, and not as a plan fiduciary.  Additionally, in *Akers v. Palmer*, 71 F.3d 226, 229-32 (6th Cir. 1995), the Sixth Circuit rejected a group of plaintiffs' characterization of a corporate board's action as fiduciary in nature when the action involved the creation and initial funding of an employee benefit plan.  In so doing, the Sixth Circuit stated that "ERISA is simply not involved in regulating conduct affecting the establishment of a plan or with its terms . . . ERISA's concern is with the elements of a plan and its administration after it has been established."  *Id.* at 230. (internal citations omitted).

11

relies on the Sixth Circuit case law, *Lion's Volunteer Blind Indus. v. Automated Group Admin., Inc.*, 195 F.3d 803, 809 (6th Cir. 1999), wherein the Court found a misrepresentation claim preempted and noted that preemption was warranted because the court "would be forced to calculate [plan] benefits that would have been owed to [the plaintiff] under [the ERISA plans]."[9]

The Court finds Local 270's argument unavailing. Local 270's reliance upon the Sixth Circuit's holding in *Lion's* is misplaced given that the case is factually dissimilar to the one at hand. In *Lion's*, Plaintiff was a beneficiary, who sought to obtain benefits that had been denied to Plaintiff under the Plan. *Id.* Here, it cannot be said that Morgan Waldron, who is not a beneficiary, seeks the same. While Local 270 avers that it is "undisputed" that Third-Party Plaintiffs seek payment for unpaid claims—*i.e.* benefits, they fail to pinpoint any statements in the record to support that this is indeed the case. To the extent Local 270 relies upon the Third-Party Complaint's reference to benefits or contribution amounts as proof that Morgan Waldron seeks unpaid claims, this argument has already been rejected by the Sixth Circuit. *See PONI, 399 F.3d at 702-03*. In *PONI*, the Court acknowledged that a damage request for a State law claim referencing plan benefits or even contribution amounts may simply be a way to articulate specific ascertainable damages—compensatory damages—proximately caused by the defendant's breach. *Id.* at 702.

Accordingly, construing the Third-Party Complaint in favor of Morgan Waldron and accepting the factual allegations contained in it as true, the Court concludes that the negligent misrepresentation claims are not preempted, the claims are, therefore, not dismissed.

### 2. Contribution/ Indemnification

---

[9] A suit to recover plan benefits or contribution amounts under the plan, would be preempted on the ground that, if allowed, it would impermissibly create an alternative to ERISA's enforcement scheme. *See PONI*, 399 F.3d at 702-03.

12

As for the contribution and indemnification claims, FirstEnergy and Local 270 collectively raise two additional arguments supporting ERISA preemption.  The first argument is based upon the derivative nature of the causes of action.  FirstEnergy contends that, because the contribution/indemnity claims are wholly derivative of the ERISA claims pled by Plaintiffs in their First Amended Complaint, the State law claims necessarily relates to the Plan and is therefore preempted.  ECF No. 99 at 2-4.  Concerning the second argument, raised by both parties, Local 270 and FirstEnergy aver that case law requires a finding of preemption.  They point the Court to decisions discussing the relationship between ERISA and claims for contribution/indemnification as proof of such.  ECF Nos. 77-1 at 9-10; 78 at 7-8.

In response to these arguments, Morgan Waldron highlights that, while several courts have taken a stance regarding whether claims for contribution and indemnification are permitted under ERISA or preempted by the statute, the Sixth Circuit has not directly spoken to these issues.  ECF No. 98 at 9.  Additionally, Morgan Waldron states that "many of the events complained of in Plaintiffs' Amended Complaint are events that took place outside of the ERISA Plan and before the Plan's creation."  ECF No. 98 at 9.  They, therefore, aver that "to the extent that Plaintiffs are entitled to recovery in this action, particularly for actions that occurred even before the formation of the Plan, [Morgan Waldron] should be able to maintain causes of action against each of the Third-Party Defendants for contribution and indemnification to remedy actions that causes or contributed to the Plan."  ECF No. 98 at 9.

Morgan Waldron's rebuttal arguments are well taken.  Although the Court credits the Third-Party Defendants for their reliance upon case law, the Court ultimately finds those cases[10]

---

[10] See *Atrix Int'l v. Hartford Life Group Ins. Co.*, 2008 WL 151614, at \*6 (D. Minn. Jan. 15, 2008) (finding state law contribution claim preempted by ERISA because the Court would have had to evaluate the defendants; liability arising from its role as a fiduciary); *Travelers Cas. and*

not helpful. Specifically, those decisions did not involve a situation, as pled here, wherein plaintiffs sought contribution or indemnification for conduct that was shown to be unrelated to the Plan and could not be categorized as being either fiduciary in nature or based upon the obligations required under the plan.

And in light of the absence of explicit instruction from the Sixth Circuit on how to decide whether the instant claims are preempted, this Court has the freedom to render a decision in favor of either party. It was therefore, imperative that either Local 270 or FirstEnergy sufficiently explain to the Court why the alleged facts in this case and applicable case law militate in favor of preemption. Neither of them succeeding in accomplishing this goal.

Moreover, as discussed for the negligent misrepresentation claims, it cannot be said at this stage of the litigation that the contribution/indemnification claims fall into any of the three *PONI* categories, indicating ERISA preemption. Nor can it be said beyond a doubt that the instant claim implicates the traditional ERISA plan entities.

In light of the foregoing, the Court declines to find that the claims for contribution/indemnification are preempted under ERISA. The claims are, therefore, not dismissed. The Court, however, welcomes a more thorough briefing on whether the instant claims are preempted after the parties have had an opportunity to engage in further discovery.[11]

---

*Sur. Co. of Am. v. Iada Servs., Inc.*, 497 F.3d 862, 867-68 (8th Cir. 2007) (finding state indemnity and contribution claims against cofiduciary preempted); *Jones v. LMR Intern., Inc.*, 457 F.3d 1174, 1180 (11th Cir. 2006) (holding claim against non-fiduciary for failing to disclose that an ERISA plan had lapsed preempted because the claim would upset the uniform regulation of plan benefits and therefore affect relations among principal ERISA entities); *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 342 (4th Cir. 2007) (finding that ERISA preempts state-law claims against non-fiduciaries if the claims relate to the plan); *see also Roberts v. Taussig*, 39 F. Supp. 2d 1010, 1013 (N.D. Ohio 1999) (holding that a co-fiduciary had no right for contribution and indemnification under ERISA ).

[11] As with the negligent misrepresentation claim, the Court has serious doubts that Morgan Waldron will be able to obtain recovery for the claims of contribution and indemnification.

14

### 3. Unjust Enrichment

As for the remaining State law cause of action—a claim for unjust enrichment—the Court concludes that this claim is preempted.

To prevail on a claim of unjust enrichment, under Ohio law, a party must prove: "(1) a benefit conferred by a plaintiff upon a defendant, (2) knowledge by the defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')." *Foley v. Am. Elec. Power*, 425 F. Supp. 2d 863, 875 (S.D. Ohio 2006) (quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 12 Ohio B. 246, 465 N.E.2d 1298 (1984)).

In support of this claim, Morgan Waldron avers that both FirstEnergy and Local 270 received a benefit when Morgan Waldron loaned the Plan $490,000 to cover unpaid claims.

Particularly problematic is that in order to establish a right to contribution under Ohio law, Morgan Waldron must demonstrate that it is a joint tortfeasor with Third-Party Defendants and, based upon the allegations contained in the record before the Court, it seems that Morgan Waldron has a steep climb to meet that burden. *See Hoffman v. Fraser*, 2011 Ohio 2200, *P64 (Ohio Ct. App., May 6, 2011) (stating that the "the right to contribution requires the existence of joint tortfeasors"); *see also Waverly City Sch. Dist. Bd. of Educ. v. Triad Architects, Inc.*, 2008 Ohio 6917, *P29 (Ohio Ct. App., Dec. 30, 2008) ("Because National has not been found liable in tort for plaintiffs' alleged damages and has not been named a defendant in any tort claims, we conclude that National's fourth-party complaint fails to establish that National is a joint tortfeasor in whose favor an independent claim of contribution exists"). The only tort claim in this action attributed to Morgan Waldron is an intentional tort claim—fraud, contained in the Amended Class Action Complaint. ECF No. 19. However, this tort cannot be used to establish Morgan Waldron's joint tortfeasor status based upon Ohio law, which expressly precludes tortfeasors of intentional torts from obtaining a right to contribution. *See* ORC Ann. 2307.25; *see also Hoffman*, 2011 Ohio 2200, *P64.

Concerning the indemnity claim, it appears that this claim would likewise fail. In order to be entitled to indemnity, under Ohio law "there must be an allegation of some express or implied contract creating a duty by one party to indemnify the other." *Hoffman*, 2011 Ohio 2200, *P69. The Third-Party Complaint and responsive brief fail to allege the existence of an express or implied contract, which, for some courts, necessitates dismissal. *Id.* (citing *Reynolds v. Physicians Ins. Co.*, 68 Ohio St. 3d 14 (Ohio 1993).

Morgan Waldron further explains that "FirstEnergy is enriched because it was obligated to pay for the health care benefits of the Local 270 members" and Morgan Waldron's loan relieved FirstEnergy of "$490,000 that it otherwise would have been obligated to pay." ECF No. 98 at 8. Concerning Local 270, Morgan Waldron states that it was enriched when "Local 270 members received $490,000 more in benefits than what their members had paid for." ECF No. 98 at 8.

Accordingly, determining whether either party retained a benefit—*i.e.* was enriched—when Morgan Waldron paid money into the Plan requires the Court to interpret the obligations and rights under the Plan.  Therefore, interpretation of the terms of benefit plans forms an essential part of the unjust enrichment claim and liability would exist here only because of the parties' ERISA governed role or conduct.  *See Davila*, 542 US at 213.  Unlike the preceding State law claims, it is clear that the unjust enrichment claim is not entirely independent of the ERISA contract as liability of this claim is derived from the particular rights and obligations established by the Plan.  *Id*. at 213-14. The claim is, therefore, preempted.  *Id*.; *see also Hutchison v. Fifth Third Bancorp*, 469 F.3d 583, 587-89 (6th Cir. 2006) (finding state law claim preempted because one of the elements of the claim involved an ERISA governed action and explaining that "[a]s long as ERISA exclusively regulates the activity . . . ERISA prevents the distinct state law tort scheme from superimposing an extra layer of regulation on top of the ERISA-regulated [activity].")

### B. ERISA Claim

In Count II of the Third-Party Complaint, Morgan Waldron lodges a "violation of ERISA Plan" claim against FirstEnergy.  ECF No. 39 at 6.   Morgan Waldron's response to

---

Yet, given that neither FirstEnergy nor Local 270 presented arguments attacking the sufficiency of the contribution/indemnification claims as pled, the Court deems that it is only fair to refrain from dismissing the claims *sua sponte*.

FirstEnergy's motion to dismiss clarifies that the ERISA claim is one in which the Morgan Waldron seeks recovery for breach of fiduciary duty under ERISA 502(a)(3), 29 U.S.C. § 405. ECF No. 98 at 10.  The claim is premised upon the allegation that FirstEnergy failed to make contributions to the Plan as required by the Plan.  ECF No. 39 at 6.

A claim for breach of fiduciary duty under §502(a)(3) of ERISA requires three elements: that (1) the defendant was a fiduciary of an ERISA plan who, (2) acting in his fiduciary capacity, (3) breached his fiduciary duty.  See In re Cardinal Health ERISA Litig., 424 F.Supp.2d 1002, 1016 (S.D. Ohio 2006).  Here, as highlighted by FirstEnergy,[12] Morgan Waldron failed to plead in the Third-Party Complaint the first element in the cause of action—that FirstEnergy is a fiduciary under the Plan.  More importantly, Morgan Waldron failed to plead sufficient factual information in the Third-Party Complaint to allow the Court to infer FirstEnergy's fiduciary status, which necessitates dismissal of the instant claim.  See Stark v. Mars, Inc., 790 F. Supp. 2d 658, 666-667 (S.D. Ohio 2011) (finding that the complaint fails to state a claim for breach of fiduciary duty because the complaint lacks sufficient facts to show that the span sponsor was acting in a fiduciary capacity).

Morgan Waldron suggests that because the Third Party Complaint alleges that FirstEnergy is a *sponsor* of the Plan, it necessarily follows that the Third-Party Complaint alleges that FirstEnergy is a f*iduciary* of the Plan.[13]   Case law does not support Morgan Waldron's inference.  Indeed, the U.S. Supreme Court has stated plainly that a plan sponsor does not become a plan fiduciary by virtue of its role as sponsor.  See Beck v. PACE Intern. Union, 551 U.S. 96, 101 (2007) ("Crown's operation of its defined-benefit pension plans placed it in dual

---

[12] ECF No. 99 at 9-10.
[13] Morgan Waldron states that "FirstEnergy is a sponsor of the Plan, and therefore a fiduciary." ECF No. 98 at 10.

17

roles as plan sponsor and plan administrator; an employer's fiduciary duties under ERISA are implicated only when it acts in the latter capacity.")

Accordingly the Court finds that Count II fails to state a claim upon which relief may be granted.  It is, therefore dismissed.

### IV.  CONCLUSION

For the reasons discussed above, the Court grants, in part, and denies, in part, FirstEnergy's motion to partially dismiss the Third-Party Complaint ([ECF No. 77](#)), and grants, in part, and denies, in part, Local 270's Motion to Dismiss ([ECF No. 78](#)).  Violation of ERISA Plan (Count II) is dismissed, and the unjust enrichment claim (Count IX), is dismissed as well.


IT IS SO ORDERED.


| June 21, 2011 | /s/ Benita Y. Pearson |
|---|---|
| Date | Benita Y. Pearson |
|  | United States District Judge |